BERZON, Circuit Judge,
concurring:
As the main opinion explains, the “Fairness in Contracting Act,” Idaho Code § 44-2012, is not saved from NLRA preemption by the line of precedent holding that collection of Davis-Bacon wages for job targeting programs violates the Davis-Bacon Act. See Int’l Bhd. of Elec. Workers, Local 357, AFL-CIO v. Brock, 68 F.3d 1194, 1201-03 (9th Cir.1995); In re Building & Constr. Trades Unions Job Targeting Programs, Case No. 90-02, 1991 WL 494718 (Wage App. Bd. June 13, 1991) (“Building Trades ”), aff'd sub nom. Building & Const. Trades Dep’t, AFL-CIO v. Reich, 40 F.3d 1275, 1277 (D.C.Cir.1994). I write separately to observe that these cases, and in particular our decision in Brock, were, in my view, wrongly decided.
First, I see no basis to conclude that any aspect of job targeting programs amounts to a violation of federal law. The Davis-Bacon Act requires contractors on covered projects to pay to workers “the full amounts accrued at time of payment,” computed at rates not less than the advertised rates. Those rates must be not less than prevailing wages, “without subsequent deduction or rebate on any account.” 40 U.S.C. § 3142(c) (emphasis added). A rebate is “[a] return of part of a payment” that has already been made. Rebate, Black’s Law Dictionary (10th ed.2014). A deduction could refer to money taken out at the time the wages are paid, but the statute specifically bans only “subsequent ” deductions. Thus, Congress was likewise referring only to deductions made after the wages were paid, presumably from later wage payments. We have previously examined Congress’s concern, in amending Davis-Bacon to include the “subsequent deduction or rebate” language, with “the illegal practices of exacting rebates or kickbacks.” Brock, 68 F.3d at 1199 (quoting S.Rep. No. 1155, 74th Cong., 1st Sess. 2, at 3 (1935); H.R.Rep. No. 1756, 74th Cong., 1st Sess. 2, at 3 (1935)). Notably, both those practices involve returning money to a contractor on the Davis-Bacon job after it was initially paid.
How, then, did we end up concluding that job targeting deductions made at the time a worker is paid contravene Davis-Bacon? The Department of Labor has promulgated regulations that bar all deductions from workers’ pay on Davis-Ba *968 con jobs unless those deductions are specifically permitted by the DOL, either categorically or by individual prior permission. 29 C.F.R. §§ 3.5, 3.6, 3.9. DOL’s decision in Building Trades was principally an interpretation of these regulations. See 1991 WL 494718 at .,*5-6. The NLRB, and this court, subsequently deferred to DOL on the matter. See Int’l Bhd. of Elec. Workers, Local 48, 332 N.L.R.B. 1492, 1500-01 (2000), order modified by 333 N.L.R.B. No. 122, enforced, 345 F.3d 1049 (9th Cir.2003); Brock, 68 F.3d at 1203. But no court has, to my knowledge, explained how the regulations — which purport to ban, with specified' exceptions, all deductions, simultaneous or subsequent — are anything but “inconsistent with the statute,” Barnhart v. Sigmon Coal Co., 534 U.S. 438, 462, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002), which .bans only subsequent deductions.
I do not mean to suggest that Congress would bless an arrangement in which a contractor deducts a worker’s wages as a way of sidestepping the prevailing wage requirement — for example, a deduction for a fund to pay for the contractor’s summer home. Davis-Bacon is, to be sure, concerned with ensuring that workers really received in the first place the prevailing wages mandated by Davis-Bacon. Brock, 68 F.3d at 1199. In other words, a worker must actually be paid the prevailing wage; a scheme to make it look as though he had been paid that wage, when in fact some portion of it returns to the contractor paying him, is unacceptable.
A rule barring such reductions to effectuate this Congressional purpose cannot, however, be grounded in the statutory provision barring “subsequent deductions.” Such arrangements involve “contemporaneous” deductions, not a “subsequent deduction or rebate.” Rather, I would hold that simultaneous deductions are impermissible when they amount to a scheme to avoid paying a prevailing wage. And I would apply a simple presumption to rule out many deductions that are patently consistent with Davis-Bacon: When a deduction is authorized by law, it is not a scheme to sidestep Davis-Bacon. Thus, for example, there is no need for specific authorization to deduct wages as income tax withholding; or for retirement accounts authorized by the Internal Revenue Code; or for the various purposes authorized by the Fair Labor Standards Act. Cf. 29 C.F.R. § 3.5. As applied here, it would not matter whether job targeting funds are considered union dues or not, as both job targeting funds and dues are authorized by § 7 of the NLRA, according to the NLRB cases discussed in the main opinion. Therefore, I would hold, Davis-Bacon is simply not implicated by the collection from Davis-Bacon wages of assessments for union-authorized job-targeting programs, whether by way of mandatory wage deductions or otherwise. As it stands, “the Secretary’s interpretation perverts the purpose of the Davis-Bacon Act, transforming a statute designed to benefit laborers into one that bars them from benefitting themselves.” Reich, 40 F.3d at 1283 (Edwards, C.J., dissenting).
Second, even assuming that DOL is right and that deductions for job targeting funds amount to a violation of the Davis-Bacon Act, Brock is sorely mistaken in holding that even direct payments from a worker to his union, with no involvement by the employing contractor, also constitute Davis-Bacon violations.
Davis-Bacon bars schemes in which it would appear the worker was paid a prevailing wage but in reality he was not. Brock, 68 F.3d at 1199. But — apart from such schemes — the worker is otherwise fully entitled to spend his wages as he sees fit. This observation is so obvious that it should not be necessary to make it. Yet *969 our opinion in Brock is fundamentally at odds with this common sense understanding.
Brock held that a union local’s requirement that union members pay an assessment to support a job targeting program was a violation of Davis-Bacon. Id. at 1196. Unlike the employer in Reich, the employing contractor in Brock had no involvement with the job targeting program. Id. at 1201. Not only did that contractor not receive job targeting funds — and, according to the union in that case, the contractor never could receive such funds— the contractor also made no deductions for the job targeting program. Id. at 1199, 1201. Instead, “union members pa[id] the two percent assessment directly to the union.” Id. at 1200. The fact that there was no deduction in Brock, only a required payment directly to the union, was immaterial, this court held, as in either event “the local union serves as an intermediary that impermissibly effectuates the reduction of employee’s wages for work performed on government projects to the benefit of contractors.” Id. (emphasis added). Indeed, the court held the same would be true “[ejven if the Workers voluntarily paid the two percent gross wage assessments.” Id. at 1202.
This focus on “contractors” in general is all wrong. Davis-Bacon prevents a worker from returning part of his wages to the particular contractor who pays him, or to an agent or subcontractor of that contractor; it is not about preventing workers from giving part of their wages to contractors in general. Cf. 40 U.S.C. § 3142(c)(3) (providing that funds may be withheld from “the contractor” to pay “the difference between the rates of wages required by the contract to be paid laborers and mechanics on the work and the rates of wages received by the laborers and mechanics and not refunded to the contractor or subcontractors or their agents”) (emphasis added); 29 C.F.R. § 3.5(d)(3) (permitting certain deductions, with DOL’s approval, provided that “[n]o profit or other benefit is otherwise obtained, directly or indirectly, by the contractor or subcontractor or any affiliated person in the form of commission, dividend, or otherwise”) (emphasis added); but see Can-Am Plumbing, Inc. v. N.L.R.B., 321 F.3d 145, 152 (D.C.Cir.2003) (concluding otherwise, based in part on Brock). On this point, I emphatically agree with Judge Edwards’s dissent in Reich. As Chief Judge Edwards said, the plain language of Davis-Bacon, which refers to “the ‘contractor or his subcontractor’ in the singular, not contractors or subcontractors in the plural[,] ... focuses the Act narrowly on deductions taken for use by the very contractor or subcontractor who signs the paycheck.” Reich, 40 F.3d at 1283 (Edwards, C.J., dissenting).
Otherwise, a contractor would violate Davis-Bacon anytime a worker uses part of his Davis-Bacon wages to pay the contractor who is putting a new roof on his house; or uses the wages to buy stock shares in a contractor’s company (or a company that itself awards contracts); or, perhaps, deposits his wages in a bank that makes loans to contractors. All of those scenarios involve the worker’s transfer, either directly or indirectly, for his own purposes, of funds earned on a Davis-Bacon job to some construction industry contractor in a way that benefits the contractor. But Davis-Bacon does not care that workers give money to a contractor; it merely seeks to prevent the workers’ wages redounding to the contractor who paid them in the first place, such that, in effect, the worker was paid less than prevailing wage.
Unless Davis-Bacon purports to establish near-plenary regulation over what workers may do with their money after *970 they have been paid — a goal that makes no sense at all, even assuming it would be permissible — it must be limited to the actual subject-matter of the statute, namely ensuring that workers are actually paid a prevailing wage. What workers do with their money at that point, either individually or collectively through a union, is of no concern to Davis-Bacon.
That being the case, Brock was wrongly decided. If a union’s members pool their resources to fund a job targeting program, that may be of concern under the NLRA (if impermissible coercion is involved, for example, see 29 U.S.C. § 158(b)(1)), but it is of no concern under the Davis-Bacon Act. The workers were paid a prevailing wage, and they collectively decided to use some of that wage to subsidize other contractors for the workers’ collective benefit. Even more clearly, if individual workers voluntarily pay into a job targeting fund, Davis-Bacon can have no more objection than it can have to workers voluntarily spending their wages- at the hardware store rather than the drug store. The workers were paid prevailing wages, so Davis-Bacon is satisfied.
Brock concluded otherwise, contending that “there is no tenable distinction between (1) direct deductions of employee wages on government projects ... and (2) union-required employee payment of a percentage of their wages earned on government projects',” and suggesting that “[t]o distinguish between the two methods of JTP assessment would be to elevate unacceptably form over substance.” 68 F.3d at 1200-01. Yet, as Chief Judge Edwards noted in his dissent in Reich, the DOL had in that case “conceded that the regulations do not prohibit unions from increasing their general dues assessment and then internally allocating a portion of that assessment to fund job targeting programs.” Reich, 40 F.3d at 1286 (Edwards, C.J., dissenting).
I agree the distinction is ridiculous. But that is no reason to expand the scope of Davis-Bacon to conduct that has nothing to do with its language or purpose. Rather, the distinction at issue — while earmarked payroll deductions to fund job training programs are unlawful, mandatory dues used internally to fund them are fine — is attributable to DOL’s regulations and its interpretations of them, which carve out certain deductions as permitted but do not permit workers collectively to decide to spend their own money in this particular way. See id. (concluding that it was DOL’s interpretation of Davis-Bacon itself that “elevates form over substance”). The latter decision has essentially nothing to do with the goals of Davis-Bacon.
In sum, in my view, DOL’s regulations barring such deductions contravene the language and intent of Davis-Bacon, and I would not defer to them. Moreover, even taking DOL’s position on the deductions piece of this morass as given, I would urge the court to reconsider Brock in a case in which, unlike this case, a challenge to the ban on contributions to union-instigated job-targeting funds traceable to Davis-Bacon job wages is squarely presented.